Barbara A. Rohr, SBN 273353
Benjamin Heikali, SBN 307466
**FARUQI & FARUQI LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone:     (424) 256-2884
Facsimile:     (424) 256-2885
Email: brohr@faruqilaw.com
           bheikali@faruqilaw.com

**[Additional counsel on signature page]**

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KLEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MEDIVATION, INC., DAVID T. HUNG, KIM D. BLICKENSTAFF, KATHRYN E. FALBERG, MICHAEL L. KING, PATRICK MACHADO, DAWN SVORONOS, W. ANTHONY VERNON, and WENDY L. YARNO,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(d)(4), 14(e) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED**<br>**David Klein**<br><br><br>**<u>CLASS ACTION</u>** |

David Klein ("Plaintiff"), by and through his undersigned counsel, brings this stockholder class action on behalf of himself and all other similarly situated public stockholders of Medivation, Inc. ("Medivation" or the "Company") against Medivation and the members of Medivation's board of directors (the "Board" or the "Individual Defendants", and together with Medivation, the "Defendants"), for violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§78n(d)(4) 78n(e), 78t(a), and

United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. § 240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of Medivation by Pfizer, Inc. (the "Proposed Transaction").  Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1.      This shareholder class action arises as a result of the Proposed Transaction, pursuant to which Medivation shareholders stand to receive $81.50 per share in cash (the "Merger Consideration") via a tender offer by Montreal, Inc., a wholly-owned subsidiary of Pfizer Inc. ("Pfizer"), which was commenced on August 30, 2016 and is scheduled to expire on September 27, 2016 (the "Tender Offer").  If a sufficient number of Medivation shares are tendered in the Tender Offer, a second-step merger will be effectuated without a shareholder vote, and Montreal, Inc. will merge with and into Medivation, with Medivation continuing as a wholly-owned subsidiary of Pfizer.

2.      Headquartered in San Francisco, California, Medivation is a biopharmaceutical company with promising drugs used in the treatment of various cancers.  Medivation's prostate cancer drug, XTANDI, generated $2.2 billion in sales over the last four quarters, and its drug talozaparib has shown promising results for the treatment of a rare form of breast cancer.

3.      Given the financial prospects of these drugs and others in Medivation's pipeline, the $81.50 per share Merger Consideration fails to provide Medivation shareholders with fair value for their shares.  The inadequate Merger Consideration is the result of a rushed sale process during which the Board caved to pressure from larger pharmaceutical companies that were eager to acquire Medivation at a discount to its intrinsic value and long-term prospects.

4.      Defendants have now recommended that Medivation shareholders accept the inadequate Merger Consideration and tender their shares in the Tender Offer by filing a materially incomplete and therefore misleading Schedule 14D-9 Solicitation/Recommendation

Statement ("Recommendation Statement") with the Securities and Exchange Commission ("SEC") on August 30, 2016.

5.      In violation of Sections 14(e), 14(d)(4) and 20(a) of the Exchange Act, the Recommendation Statement omits certain material information, which renders the information disclosed materially misleading.  Specifically, the Recommendation statement fails to disclose certain information about: (i) communications from other interested parties that were involved in negotiations to acquire Medivation; (ii) the terms of the confidentiality agreements entered into by such parties; and (iii) the valuation analyses performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Evercore Group L.L.C. ("Evercore").

6.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Medivation stockholders before the expiration of the Tender Offer, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, a stockholder of Medivation common stock.

8.      Defendant Medivation is incorporated under the laws of Delaware and maintains its principal executive offices at 525 Market Street, 36th Floor, San Francisco, California. Medivation is a biopharmaceutical company focused on the development and commercialization of medically innovative therapies to treat serious diseases for which there are limited treatment options.

9.      Individual Defendant Dr. David Hung is a co-founder of Medivation and served as president, chief executive officer and director of Medivation since its inception in September 2003.

CLASS ACTION COMPLAINT

10.     Individual Defendant Kim D. Blickenstaff serves as the Chairman of the Medivation Board.

11.     Individual Defenant Kathryn E. Falberg is, and has been at all relevant times, a director of Medivation.

12.     Individual Defendant Dr. Michael L. King, is, and has been at all relevant times, a director of Medivation.

13.     Individual Defendant Patrick Machado is, and has been at all relevant times, a director of Medivation.

14.     Individual Defendant Dawn Svoronos is, and has been at all relevant times, a director of Medivation.

15.     Individual Defendant W. Anthony Vernon is, and has been at all relevant times, a director of Medivation.

16.     Individual Defendant Wendy L. Yarno is, and has been at all relevant times, a director of Medivation.

## **JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(d) of the Exchange Act and Rule 14d-9 promulgated thereunder, and Sections 14(e) and 20(a) of the Exchange Act.

18.     Personal jurisdiction exists over each Defendant either because the Defendant is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this

District; and (ii) Medivation has its principal place of business in San Francisco, California, within this District.

## SUBSTANTIVE ALLEGATIONS

### A.    The Merger Consideration Is Inadequate In Light Of Medivation's Strong Growth Prospects

20.    The announcement of the Proposed Transaction comes after Medivation has achieved significant financial results in recent quarters and just as the Company is set to reap billions in profits from its promising drug pipeline.

21.    On February 25, 2016, the Company announced the following impressive fourth quarter and full year 2015 financial results: full year 2015 non-GAAP collaboration revenue was $695.4 million, up 79% from the previous year; non-GAAP net income was $170.0 million, or $1.01 per diluted share, for the full year 2015, compared with non-GAAP net income of $34.6 million, or $0.22 per diluted share, in 2014; and, on a GAAP basis, Medivation's collaboration revenue for the fourth quarter of 2015 was $377.7 million compared with $274.7 million for the same period in 2014 (+37% vs. prior year) and $943.3 million for the full year 2015 compared with $710.5 million in 2014 (+33% vs. prior year).

22.    Commenting on the positive results, Individual Defendant Hung stated:

> **We are delighted with our substantial progress in 2015 on many fronts** -- marked by strong worldwide net sales of XTANDI® (enzalutamide) capsules at the Astellas level, which grew 80 percent over 2014, as well as key developments that enhance the clinical understanding of enzalutamide, expand and diversify our late-stage pipeline, and help secure our plans to continue to meet the needs of underserved patient populations… In 2015, several promising developments in the enzalutamide clinical development program, including positive results from two Phase 2 trials comparing enzalutamide to bicalutamide in castration-resistant prostate cancer and a Phase 2 trial in advanced triple-negative breast cancer, combined with the expansion of our clinical pipeline with our acquisition of talazoparib, provide Medivation with a platform from which to build a world-class global oncology

1  franchise. We look forward to multiple milestones throughout
2  2016 as we report on our continued progress.

3      23.     On May 5, 2016, Medivation announced more strong financial results for the first
4  quarter of 2016.  Specifically, the Company announced that: Worldwide net sales of XTANDI
5  totaled $547 million (+53% vs. the prior year); XTANDI unit demand increased 33% versus the
6  prior year and 7% versus the fourth quarter; non-GAAP collaboration revenue for the first
7  quarter of 2016 was $182.5 million, compared with $127.8 million for the same period in 2015
8  (+43% vs. prior year); and on a GAAP basis, Medivation's collaboration revenue for the first
9  quarter of 2016 was $182.5 million, compared with $129.2 million for the same period in 2015
10 (+41% vs. prior year).

11     24.     Commenting on the positive results, Individual Defendant Hung stated:

12
13      Medivation is off to a strong start in 2016 as we continue to
        expand our leadership position in oncology, extend XTANDI's
14      reach into urology and other areas, and advance our **robust late-
        stage pipeline**…**The first quarter of 2016 represented a
15      landmark quarter for Medivation** as for the first time we
        claimed more than 50% market share of the novel hormonal
16      therapy prostate cancer market in the U.S. **As we look ahead, we
        believe there are a number of positive trends and milestones
17      that will allow us to accelerate our momentum and create
        additional shareholder value**…For example, as XTANDI is
18      increasingly used as first-line therapy in metastatic castration
        resistant prostate cancer, we expect the duration of treatment to
19      continue to increase beyond the nearly eight months that we saw at
        the end of 2015. Furthermore, with the Committee for Medicinal
20      Products opinion to include TERRAIN data in the European
        XTANDI label and the upcoming U.S. PDUFA date on October
21      22, 2016, we believe that we are poised to achieve even greater
        penetration of the urology market where the largest commercial
22      opportunity lies for XTANDI. In addition to our plans to grow
        XTANDI, our wholly-owned assets, talazoparib and pidilizumab,
23      represent compelling pipeline opportunities that we plan to develop
        and commercialize to drive long-term value appreciation for our
24      shareholders.
25
26
27
28
                                          6

25.     Most recently, on August 9, 2016, the Company announced the following impressive financial results for the second quarter of 2016: collaboration revenue on a GAAP basis for the second quarter of 2016 was $206.2 million, compared with $175.7 million for the same period in 2015 (+17% vs. prior year); Non-GAAP collaboration revenue for the second quarter of 2016 was $206.2 million, compared with $174.8 million, for the same period in 2015 (+18% vs. prior year); Non-GAAP net income for the second quarter of 2016 was $50.0 million, or $0.29 per diluted share, compared with non-GAAP net income of $48.7 million, or $0.29 per diluted share, for the same period in 2015; worldwide net sales of XTANDI totaled $595 million in (+22% vs. Prior Year); XTANDI net sales of $330.3 million (+11% vs. Prior Year); and U.S. XTANDI underlying demand increased 18% versus the prior year.

26.     Commenting on the positive results, Individual Defendant Hung stated:

> For the second consecutive quarter, XTANDI was the leading novel hormonal agent in the U.S. We continue to see increases in duration of therapy and new patient starts as well as accelerating uptake in the urology market…In addition, we anticipate a very exciting second half of 2016 for XTANDI as we prepare commercially for the October 22 PDUFA date for a potential U.S. label amendment to include head-to-head data of enzalutamide versus bicalutamide. We also expect top-line results from our Phase II ER/PR positive breast cancer trial and our PLATO trial before year end. Looking ahead into next year, we anticipate the completion of enrollment for PROSPER, our Phase III trial in non-metastatic castration-resistant prostate cancer, as well as potentially top-line results from this study… Moreover, we have made important strides in advancing the development of talazoparib, having completed successful meetings with the FDA to align on clinical development plans in several indications. We anticipate initiating multiple, including some potentially registrational, studies for talazoparib in non-gBRCA breast cancer, prostate cancer, small cell lung cancer and ovarian cancer in 2016 and glioblastoma multiforme, non-small cell lung cancer and potentially other indications in 2017. We also expect to read out top-line results from our first talazoparib registrational study, EMBRACA, in germline-BRCA mutated breast cancer in the first half of 2017. And finally, given the overall survival results we have recently reported with pidilizumab in a rare childhood brain tumor called diffuse intrinsic pontine glioma, or DIPG, we plan to

meet with the FDA to discuss potential approval pathways for this
wholly owned, late-stage asset.

27.     In sum, Medivation has experienced significant financial growth over the past
several quarters, which is expected to continue in light of the promising results for its various
drugs.  Indeed, the oncology market in which Medivation operates is expected to grow 7.5% to
10.5% annually through 2020, and XTANDI'S peak annual sales in the U.S. are estimated to
climb as high as $5.5 billion.  Further, Medivation has other gems in its pipeline.  Individual
Defendant Hung has indicated that Tesaro, which recently generated positive results in treating
ovarian cancer, could have even bigger sales than XTANDI.

28.     Despite Medivation's promising financial prospects, the Board caved to pressure
from larger pharmaceutical companies that were eager to acquire the Company at a discount to
its intrinsic value, and agreed to sell the Company now for inadequate consideration.

**B.      The Flawed Sale Process**

29.     The Board had no intention of selling the Company until it received hostile
overtures from Sanofi in March 2016.  The Board initially rebuffed Sanofi, and in April 2016 it
concluded that in light of the Company's intrinsic value and its "well-defined strategic plan, it
was not the appropriate time for Medivation to engage in discussions relating to a strategic
transaction with Sanofi or any other party."  Recommendation Statement at 16.

30.     Nevertheless, a month later, as Sanofi became more aggressive in its quest to
acquire the Company, the Board caved to the pressure and decided to commence a rushed sale
process.  Specifically, on May 25, 2016, Sanofi filed with the SEC a consent solicitation
statement seeking the consent of Medivation stockholders to four proposals, *including the
removal of each of the eight Individual Defendants from the Medivation Board*.  A few weeks
thereafter, faced with the prospect of losing their jobs in a hostile control contest, the Board
instructed its financial advisors to reach out to other industry participants to gauge their interest
in acquiring the Company.

31.     The Board received initial proposals to acquire the Company from Pfizer and four other parties (collectively, the "Interested Parties").  The Board authorized the Company to enter into confidentiality agreements with the Interested Parties, but the Recommendation Statement fails to explicitly state whether the confidentiality agreements entered into with each of the Interested Parties contained standstill provisions that terminated upon the announcement of the Proposed Transaction.

32.     After initial bids were received on August 8, 2016, the Board instructed its advisors to inform Pfizer, Company 1, and Company 4 that its bids were sufficient for them to proceed to the second round of the process, and to inform Company 2 and Company 3 that its proposals were insufficient and that they would not be invited to continue in the process. Company 2 and Company 3 quickly submitted significantly higher bids, and were then told they could proceed to the second round.

33.     Despite the fact that the Interested Parties were clearly willing to competitively bid against one another, the Board rushed to conclude the sale process, and demanded that the Interested Parties submit their best and final proposals by noon on August 20.  The Board also instructed its financial advisors to tell each Interested Party that it would not be contacted if their proposal was not the highest.

34.     Beginning at 11:51 a.m. on August 20, Pfizer, Company 1, and Company 2 submitted close proposals, each within $1.50 of the other.  Specifically, Company 2 bid $80.00 per share, Company 1 bid $80.25 per share, and Pfizer bid $81.50 per share.  Despite the closeness of the proposals and the Interested Parties previous willingness to increase their bids, the Board proceeded to immediately approve the Proposed Transaction with Pfizer, without reaching out to either Company 1 or Company 2.  Medivation and Pfizer also executed the merger agreement on August 20, 2016, and the parties issued a joint press release announcing the Proposed Transaction on August 22, 2016.

CLASS ACTION COMPLAINT

35.     The Recommendation Statement fails to indicate whether either Company 1 or Company 2 contacted Medivation sometime after they submitted their respective bids on August 20, to inquire about the status of their bids or indicate their continued interest in pursuing a transaction.

36.     In sum, the Board recognized the Company's bright long-term prospects and knew that it had a "well-defined strategic plan" to achieve strong long-term financial results. Nevertheless, the Board caved to pressure from Sanofi and commenced a sale process to quickly sell the Company at a price below its intrinsic value.  Defendants have now asked Medivation's shareholders to tender their shares for the inadequate Merger Consideration without providing them with all material information necessary to make a fully informed decision.

**C.     Defendants Failed To Adequately Disclose All Material Information Concerning The Proposed Transaction In The Recommendation Statement**

37.     Defendants have now asked Medivation stockholders to accept the inadequate Merger Consideration by tendering their shares in the Tender Offer based upon materially incomplete and misleading information in the Recommendation Statement.  It is critical that stockholders receive complete and accurate information about the Proposed Transaction prior to deciding whether to tender their shares.  To date, however, Defendants have failed to provide Medivation stockholders with such information.

38.     First, the Recommendation Statement fails to expressly indicate whether or not the confidentiality agreements entered into with each of the Interested Parties included a standstill provision, and, if so, whether such agreements also contained a "fall-away" provision that allows each of the Interested Parties to submit a superior proposal to acquire the Company. Instead, the Recommendation Statement only states that at one point Cooley, the Company's counsel, discussed with the Board a "*contemplated* form of confidentiality agreement" which included such provisions.  It is unclear whether the actual confidentiality agreements the Company entered into with each of the Interested Parties *actually* contained such provisions.

Such information is material to Medivation stockholders, as a reasonable shareholder would find it material to know whether or not other parties that expressed a serious interest in acquiring the Company are not foreclosed from submitting superior proposals.  The omission of this information renders the references to the confidentiality agreements on pages 19 and 20 of the Recommendation Statement incomplete and therefore misleading.

39.    Second, the Recommendation Statement fails to indicate whether the Individual Defendants, Medivation or the financial advisors were contacted by either Company 1 or Company 2 after they submitted their proposals on August 20.  One would expect that both companies were interested in knowing how their bids fared and contacted Medivation or its advisors to find out, but the Recommendation Statement does not say.  Such information is material to Medivation shareholders, particularly because the Board decided that it would simply act on the best proposal without bothering to solicit higher bids, even though the three bids were extremely close.  Shareholders would find it material to know whether or not Company 1 or Company 2 expressed any interest in acquiring the Company *after* they submitted their bids on August 20.  The omission of such information renders the description of the process leading up to the signing of the merger agreement on pages 22 and 23 of the Recommendation Statement materially incomplete and therefore misleading.

40.    Further, the Recommendation Statement provides a materially incomplete and therefore misleading summary of the key financial analyses J.P. Morgan performed in support of its fairness opinion.  Specifically, the Recommendation Statement fails to disclose the individual multiples ("Individual Multiples") or range, mean and median multiples ("Summary Multiple Data") J.P. Morgan calculated for each of the selected companies in connection with its Public Trading Multiples Analysis on pages 32 and 33 of the Recommendation Statement.  Instead, the Recommendation Statement only discloses the multiple reference range J.P. Morgan *applied*.  Recommendation Statement at 33.  The multiple data is material to shareholders, as it is necessary for them to determine whether or not the ranges J.P. Morgan applied were reasonable.

Indeed, Summary Multiple Data is disclosed for the analogous valuation analysis performed by Medivation's other financial advisor, Evercore. *See* Recommendation Statement at 39-40 (disclosing the 25th percentile, mean, median and 75th percentile multiples). The omission of the Individual Multiples and the Summary Multiple Data renders the implied value per share ranges set forth on page 33 of the Recommendation Statement misleading, because Medivation shareholders are unable to determine whether those ranges accurately reflect the value of their shares.

41. Lastly, with respect to J.P. Morgan's Selected Transactions Analysis (Recommendation Statement at 33) and Evercore's Selected Peer Group Public Trading Analysis and Precedent Transaction Analysis (Recommendation Statement at 39-40), the Recommendation Statement fails to provide the Individual Multiples. A fair summary of these analyses should include the Individual Multiples; indeed, you would never see a banker's presentation go to a board without the Individual Multiples in it. The omission of the Individual Multiples renders the summaries of each analysis materially incomplete and therefore misleading, as shareholders are unable to compare the multiples for each company and transaction to the Proposed Transaction.

42. The Defendants were reckless in failing to disclose the above-referenced material information. Indeed, each of the Defendants has knowledge of such information, as they were directly involved in the sale process and thus know of the omitted information regarding the confidentiality agreements and communications from Party 1 and Party 2. Further, the presentations J.P. Morgan and Evercore made to the Board undoubtedly included the Individual Multiples for each analysis, as banker presentations always include the Individual Multiples. Further, the Individual Defendants know that the above-referenced material information has been omitted from the Recommendation Statement, as their fiduciary obligations required them to review the Recommendation Statement before it is disseminated to shareholders. Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that

CLASS ACTION COMPLAINT

were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.

## CLASS ALLEGATIONS

43.     Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 individually and on behalf of all other holders of Medivation common stock (except Defendants named herein and any person, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest) who are or will be threatened with injury arising from Defendants' wrongful actions as more fully described herein (the "Class").

44.     This action is properly maintainable as a class action.

45.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are thousands of members in the Class.  As of August 2, 2016, there were more than 165 million Medivation shares issues and outstanding.  The holders of these shares of stock are believed to be geographically dispersed throughout the United States.  All members of the Class may be identified from records maintained by Medivation or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

46.     Questions of law and fact are common to the Class and predominate over questions affecting any individual class member.  The common questions include, *inter alia*, the following:   (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement in violation of Section 14(e) and 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer  irreparable harm if the Proposed Transaction is consummated as presently anticipated.

CLASS ACTION COMPLAINT

47.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

48.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude maintenance as a class action.

## COUNT I

### Claim for Violations of Section 14(e) of the Exchange Act
### Against All Defendants

50.     Plaintiff repeats and realleges each allegation set forth herein.

51.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

52.     As discussed above, Defendants filed and delivered the Recommendation Statement to Medivation shareholders, which Defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

53.     During the relevant time period, Defendants disseminated the false and misleading Recommendation Statement above.  Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

CLASS ACTION COMPLAINT

54.     The Recommendation Statement was prepared, reviewed and/or disseminated by Defendants.   It misrepresented and/or omitted material facts, including material information identified above.

55.     In so doing, Defendants made misleading statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

56.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to shareholders.

57.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

58.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

CLASS ACTION COMPLAINT

<u>**COUNT II**</u>

**Claim for Violations of Section 14(d)(4) of the Exchange Act and**
<u>**SEC Rule 14d-9 (17 C.F.R. § 240.14d-9) Against All Defendants**</u>

59.     Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

60.     Defendants have issued the Recommendation Statement with the intention of soliciting shareholder support for the Proposed Transaction.

61.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.  Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

62.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

63.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

CLASS ACTION COMPLAINT

64.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

65.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

66.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

### Claims for Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

67.     Plaintiff repeats and realleges each allegation set forth herein.

68.     The Individual Defendants acted as controlling persons of Medivation within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Medivation, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore misleading.

69.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

71.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

72.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Tender Offer and Proposed Transaction, unless

1    and until the Company discloses the material information discussed above which has been

2    omitted from the Recommendation Statement;

3         C.    In the event Defendants consummate the Proposed Transaction, awarding

4    damages to Plaintiff and the Class;

5         D.    Awarding Plaintiff the costs of this action, including reasonable allowance for

6    Plaintiff's attorneys' and experts' fees; and

7         E.    Granting such other and further relief as this Court may deem just and proper.

8                                   **JURY DEMAND**

9         Plaintiff demands a trial by jury on all issues so triable.

10   Dated:  September 7, 2016

11                                      **FARUQI & FARUQI, LLP**

12                                      /s/ *Barbara A. Rohr*_____
13                                      Barbara A. Rohr SBN 273353
                                        Benjamin Heikali SBN 307466
14                                      10866 Wilshire Boulevard, Suite 1470
                                        Los Angeles, CA 90024
15                                      Telephone: (424) 256-2884
                                        Facsimile:  (424) 256-2885
16                                      Email: brohr@faruqilaw.com
                                               bheikali@faruqilaw.com
17
                                        *Attorneys for Plaintiff*
18

19   **OF COUNSEL:**

20   **FARUQI & FARUQI, LLP**
     Nadeem Faruqi
21   685 Third Avenue, 26th Floor
     New York, NY 10017
22   Tel: (212) 983-9330
     Email: nfaruqi@faruqilaw.com
23

24        -and-

25   **MONTEVERDE & ASSOCIATES PC**
     Juan E. Monteverde
26   The Empire State Building
     350 Fifth Avenue, 59th Floor
27

28
                                   19

New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 601-2610
Email: jmonteverde@faruqilaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, David Klein ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed a draft complaint against Medivation, Inc. ("Medivation") and the other named defendants and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.  Plaintiff selects Monteverde & Associates PC and Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.  Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in Medivation securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.  In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, unless otherwise specified below.

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 6th day of September, 2016.

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 05/05/16 | 200 shares @ $59.72 |
|  |  |  |
|  |  |  |
|  |  |  |